We'll start with United States v. Goubadia. Mr. Guttman. Good morning. May it please the court, my name is Jeremy Guttman and I represent Appellant Emmanuel Goubadia. The essential evidence in this case consisted of a computer which was used in search and later search pursuant to affidavits from Clayton County, Georgia, and they were based on an affidavit by a detective who relied on an informant but did not establish the veracity or the basis of knowledge with regard to the many conclusory statements in the affidavit. If I could, I'd like to jump to the government's argument that it doesn't matter because the good faith exception applies. We say it does not because, in fact, the magistrate was misled. If I could explain that, the first warrant stated that the informant had observed scanners, embossers, and printers, and other equipment for making or cloning credit cards. And the warrant authorized a search for all of those things, but in fact, no scanners, no embossers, no printers, none of that was actually found. And we would suggest cast doubt on the claim that the informant actually saw those things. It's the suspicion that he just made that up. But in the second warrant, which was for the search of the computer, the applicant, the detective, did not tell the court those circumstances and, in fact, concealed it. He left out that the earlier warrant had authorized a search for all of those types of items and defended that the earlier search was only for credit cards and computers and a computer, which was what they had found there. So it gave the impression that the informant's information had been corroborated when the full story actually creates a very different impression and cast doubt on the informant. So based on that, we that they found some electronic devices that were consistent with what the informant said? Well, the only thing they found, they found a computer. They didn't find all these other things that supposedly had to do with the manufacturing or fabricating of fraudulent affidavits, which are based on failing to establish what the basis of knowledge was, as opposed to just asking the court to accept conclusory statements. The informant reportedly stated that he had taken Mr. Gugabadia to visit his wife in jail after she had been arrested for a crime involving fraud, for having a fraudulent credit card or trying to use one. And then the informant, according to the affidavit, said that Mr. Gugabadia was quote, involved in the fraudulent credit card activities. But it doesn't say how he knew that. It doesn't say he observed him engaging in fraudulent credit card activity. He did say that he saw Mr. Gugabadia with the computers and other equipment in the initial motel room. Exactly. He says he saw that, but how did he help him transport that equipment to the motel room? Right. But my point is that there was nothing presented to the magistrate to explain how the informant knew what he claimed he knew about fraudulent activities. He didn't say he participated in them. He didn't say he observed. There's no indication of what he observed. All he said he did was transport equipment. But again, how did he know? Was it something he was told? Was there a confession? Or is it just a surmise? I'm sorry, Mr. Gutman, but he drove Mr. Gugabadia to the jail to visit his wife after his wife was arrested with 17 fraudulent cards, right? That's correct, your honor. So and then he drove him back to an apartment and observed him in an apartment with equipment consistent with that. And then he helped him move those things to another room, right? They well, first of all, we don't the timing is also unstated in the affidavit. There's nothing that really indicates when the observations were made relative to. All right. But the order is what's really relevant. He takes him to the jail after the wife was arrested, returns him to a hotel, and then that equipment is moved to a different hotel room. Right. But but what's is a connection other than visiting his wife in jail. There's nothing that indicated what was being done with the equipment that was observed, that was moved, that it's a surmise, perhaps, by the informant. We might call it an inference. Right. And probable cause is this. There might be if there were more facts. The problem with this affidavit, and I urge the actual affidavits because they they're very different than the typical affidavit that we seen in the courts in the Second Circuit. They are they leave a lot to the imagination. They largely state things that so so that inference is not really spelled out. The basis for that he transported equipment, the connection between the equipment and anything. And we really don't know anything about. The basis for the for the charge against this, this is good body other than other than the fact that she was arrested for it, there's no background about what established the basis for that arrest. But in any event, there's nothing that that really allows you to to say what what what the informant understood. And the informant also made a reference to to Mr. Guwabati his reputation and that he was giving their native country, Nigeria, bad name, suggesting that he may have based what he was saying on things he had heard or things that were rumored. And again, I think all of this doesn't rise to the level of of probable cause, which requires looking at how did he know what he says he knows and what basis do we have for believing that we can rely on this information. And then the second one was similarly flawed. Did they have excuse me, did they have any relationship with each other beyond one being of Nigerian origin and a taxi driver and the other being your client? The the the affidavit says nothing about what what relationship they had at all. There's no indication of anything other than that he drove him in a scab. Was he just and and just that day, seriously with that? That is just a guess from the affidavit. You would have to expect there's nothing establishing that relationship in the second war. And now the same informant, Mr. Adelson, now says that Guwabati used his computer to prepare fraudulent tax returns. But again, there is there is no explanation of how he would know that. Was he a participant in the crime? What did Mr. Guwabati tell him? The kind of things that a court would look to to say, I'm not just ratifying the conclusions of the detectives. I'm there's evidence before me that can provide a basis for saying for making a finding of probable cause that just didn't exist here. It didn't exist other than that he's an identified informant. I'm having a little trouble understanding what the precise argument is. You're requiring a whole lot of bells and whistles in connection with corroboration of informant where here, particularly with respect to the second one, what he said was at least in part true that there was computer equipment that and that they find the equipment after the visit to the wife in jail and that he moves from one room to another. And the motel, the second motel room, as I understand it, was registered in the name of Mr. Guwabati. So all those things are corroborative of what the informant said. Well, they in fact did not find all the equipment that he referred to. All right. They found some equipment. Well, they found a computer. They found a computer and phones and they did find some credit cards. Forty-one, right? Forty-one credit cards. Forty-one credit cards. Yes, but there was additional information that, again, they had heard from a different county's police department that those were fraudulent credit cards. There's nothing explaining what exactly they were told and what investigation had been done, what established any of that. It's basically another police officer made this conclusion. These are fraudulent. You deserve two minutes for rebuttal. We'll My name is Tiffany Lee and I represent the United States. The issue before your honors is whether or not the district court erred when it denied Mr. Guwabati's motion to suppress, primarily whether the courts below erred in determining that there was sufficient probable cause to support the search warrants. On the two search warrants in question, here are the ones to room 311 of the sundown suites and the second warrant which was issued in December with respect to searching the actual computer equipment seized. I think when you measure the deferential standard that is to be applied when we're reviewing search warrants that have been issued and reviewed by other judges, there's a highly deferential standard applied and against the standard, Mr. Guwabati's arguments fail. First, there is probable cause. Let's start with the first warrant. If you look at the totality of the circumstances, there was a substantial basis for the Clayton equipment, anything to do with fraudulent credit cards in room 311 of the sundown suites. You have a named individual who provided first-hand information with respect to his involvement in terms of as a taxi driver driving Mr. Guwabati to visit his wife. Would you address Mr. Guttman's central point, at least with respect to the first warrant of room 311, which is that the informant here was not corroborated, at least on this record. So what corroboration? Assuming that we require corroboration, how was he corroborated? Yes, Your Honor. This court in the past has said that there's not a necessity for that type of corroboration, but assuming corroboration, let's look at the first warrant. The way it's listed, it talks about Mrs. Guwabati's arrest. It talks about how she was arrested and found to be in possession of fraudulent credit cards. Then it talks about how Mr. Adamson, the informant, comes in and says, listen, I've been driving this guy, Mr. Guwabati. He's visiting his wife in jail, and I think I see him with fraudulent credit card stuff. That in and of itself is corroboration because he could have said, well, I was driving this guy. He's visiting his wife in jail. I think she's involved with something. I don't know what it is, but the way the sequence is outlined in the affidavit, there is corroboration, at least with respect to the fact that Mr. Adamson was driving an individual who did have a spouse who was in jail for a particular type of crime. In light of that, I believe there is sufficient corroboration. To address Mr. Guttman's point, he tried to make a temporal proximity issue with respect to probable cause in terms of, you know, suggesting that, wait a minute, Mrs. Guwabati could have been arrested long ago. How do we know that this evidence is still fresh? The point is the evidence was potentially involved, had to deal with Mr. Guwabati's involvement with the computer equipment and producing fraudulent credit cards. Therefore, when Mr. Adamson goes to the police following his first interaction with them, telling them, listen, I have new information. Mr. Guwabati has moved. He's changed vicinity in terms of where he's gone, and I actually, hands on, helped him move all his stuff to room 11 at the Sundown Suites. I mean, I don't think in terms of temporal proximity, you can't get any closer than that. That's the day before the warrant, right? October 15th is when the move took place, and October 16th is when the warrant gets issued, right? I think the warrant was actually signed on the 15th and may not have been executed until the 16th. When I'm looking at the signature page, I think the judge issued on the 15th, the very same day that Mr. Adamson moved, and then it wasn't executed by law enforcement until the day after. Anyway, it's contemporaneous. It is. It is pretty much as close to contemporaneous as we have in these situations. So therefore, looking at the totality of the circumstances and under the deference and the view that this court has given when it reviews search warrants that have been issued by other courts, I think that that probable cause has been satisfied. With respect to particularity, you know, I think Mr. Guttman complains that Mr. Adamson didn't particularly describe the computers, but in terms of what law enforcement was supposed to be looking for, I think the warrants described with sufficient particularity, yet you're supposed to look for computers or devices that may be involved with respect to the production of fraudulent credit cards. Turning to probable cause on the second question, embossers and printers and that sort of thing, that's in the warrant. That's sort of my sense was that that's the kind of boilerplate you use when you're going to be searching for equipment associated with a operation, an illegal credit card operation. Yes. Did Adamson say he saw printers and embossers and that sort of thing? That's not apparent in the affidavit, Your Honor. If you look, if you turn to appendix page 40, he simply states that he simply describes the material as equipment, computers, equipment, and various credit cards. So it's much more, it's more generic than the law enforcement as the type of materials that they're seeking to look for. And the equipment found in the room were computer and phones and credit cards. Any other equipment? None that I'm aware of, Your Honor. Basically, if you're going by the affidavit, again, appendix page 50, it describes that on the date that law enforcement executed the warrant, they located two laptops, five cellular telephones, and 41 prepaid debit cards. And then with respect to the information that was provided, in addition to the adoption of the information from the first warrant, you see that they had conducted a second interview that was recorded with Mr. Adamson, who then alluded to the potential tax refund part of the scheme. And then separately, that was corroborated. What page was that again? That's appendix 50, Your Honor. That's page two of the affidavit for the second search warrant. Got it. And then it also states how Peachtree City Police had identified that the credit cards that were used to arrest Mrs. Gwabadia also had tax refunds deposited within them. Given all these circumstances, both warrants were adequately supported by probable cause. But to the extent that even if this court were to believe that the probable cause was insufficient, there's simply no evidence to suggest that any reason why the Leon good faith exception should not be applied under the circumstances. Before you go there, I wanted to ask you about the computer being powered on. So that's the record with respect to who powered it on. In other words, is it that the computer was on and there was the screen was visible and therefore in plain view? Or is it that the agents came, seize the computers, press the button to see if it was powered on and then something popped up on the screen? So there's no record with that, Your Honor. And I think Mr. Gutman was making the argument that it seems from his interpretation of that statement, which again appears on appendix page 50 starts on a 50 and then continues on to page 51. It's Mr. Gutman's that you can assume that that's what happened. But it's the government's new view that the record, there is no record evidence of that. So similarly, I'm sorry, there was a hearing in this case, right? There was a hearing with respect to statements that Mr. Gwabadia gave. I don't think they really, the hearing necessarily addressed the issue with respect to the computers. The question is how to read that. What tends to read that? I guess so. It basically says the computer seized during the search warrant was powered on and did have an open document on screen upon seizure. It's unclear. I concede that it's unclear, but by the same token, I don't think there's anything necessarily to suggest that law enforcement turned on the computer. And who has the burden of showing that, by the way, what that means or doesn't mean. What that means or doesn't mean. That's a good question, Your Honor. I think the question would go to whether or not there was misconduct outside of the warrant. The problem is in the courts below, this was not squarely addressed. This is an issue that's being raised now. Well, I guess my question is whose problem is that? So if it's Mr. Gwabadia's burden, then it's his problem. I would say under the plain error review standard, given that this was not squarely addressed, definitely not addressed in terms of law enforcement acting outside or anything along those lines, I would suggest that it's how this substantially affected his interest, his justice interests. Wait, if the computer was closed and the officers came in, you know, it's a laptop, so, you know, they pull it open, press the button, and then look at a screen, that arguably would be a search, right? Without a warrant.  So was that argument made below? It's unclear. Again, because of the fact that Mr. Gwabadia represented himself below at this juncture, this specific issue was not pressed. I think I referenced it in our filing that there was a point where he suggested vis-a-vis the second warrant. He did allude, and this would be docket entry 60, page 10, that he just simply argued without providing any facts or information that the computers and other media seized in his hotel room was invalid because law enforcement had conducted a search of those items prior to applying for the warrant. But this was never pressed anywhere beyond it, and my review of the hearing transcript does not show any, again, inquiry into the officers about that. But at the end of the day, there's no need to go there, again, because of the fact that I think basically what you have here is in terms of warrant one being valid and warrant two being valid, and absolutely no evidence to suggest improper activity on the part of law enforcement. There's nothing on the record. Warrant two is based in part on a plain view observation of incriminating documents on a computer. At least that's what it appears to be. Am I wrong about that? But there was also other information in order to... So if you're arguing that's not necessary, then that's, I think, a different argument. You're saying that there was probable cause even without the plain view document on the computer, then that's fine. Is that what you're saying? That is, because of the fact that even if that sentence or nothing was referenced in terms of the status of that computer, all the other information preceding that provided probable cause in order to search that computer. Given especially Mr. Adamson's statement that there was fraudulent tax returns, and then there was also information from the Peachtree Investigation of Mrs. Guabadia to suggest that those debit cards also contained tax return information. Thank you very much. We'll hear from Mr. Guttman on rebuttal. Mr. Guttman. Thank you. Two points I'd like to clarify. One is that, in fact, in the first affidavit, it did not state that Mr. Adamson was ever in the second hotel room. So that whole point, he referred to the first hotel room. In the second affidavit, it adds something about that, but in the first affidavit that actually led to the search, there was no evidence. The affidavit was silent. Doesn't he say that he helped him move equipment? To the original, to the first hotel room, it doesn't say how he knew what was in the second hotel room. And again, the timing of these moves, it's still not clear when any of this was in reference to going to the jail to see Mr. Guabadia's wife. And I do take issue with the idea that there was anything connecting Mr. Guabadia to the criminal activity alleged. Obviously, it's only guilt by association that his wife was arrested for something. And the informant did not add anything beyond the fact. He didn't provide a basis for saying how he knew about Mr. Guabadia being involved with fraudulent credit cards. I did also, just a minor correction, on page 49 in the first affidavit, the informant is represented as having specifically said that he saw equipment for producing fraudulent credit cards. So that wasn't just something that was added for purposes of the warrant by the officers based on didn't say embossers or printers. Well, it doesn't spell that out. I agree with that. It says equipment. Again, there was no manufacturing equipment that was found. So it's a discrepancy. And the fact that he's a named informant doesn't eliminate the need to examine his veracity. It's obviously an important thing mentioned in many of the cases on probable cause, which say you can make up for a failure to show either that the person has a track record or anything else that he's not a paid informant, right? He's an informant who comes in and volunteers information, which if he's lying, will subject him to perjury or worse, right? That's correct, Your Honor. But I think the court's cases and the Supreme Court cases don't draw that distinction. And veracity isn't only for paid informants. With any informant, if we don't know anything about him, it's expected the police will do some sort of independent investigation in an effort to corroborate. And that didn't happen here. Thank you. Thank you very much, Mr. Goodman. Thank you. We will reserve decision.